UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY GROSE, f/n/a
BEVERLY HARRINGTON,

        Plaintiff,

v.                                    CASE NO. 06-15175

CORRECTIONAL MEDICAL      DISTRICT JUDGE GEORGE CARAM STEEH
SERVICES, PATRICIA CARUSO,
JOAN YUKINS, BRUCE            MAGISTRATE JUDGE DONALD A. SCHEER
CURTIS, SHERILYN BUTLER,
GOPAL K. SINGHAL, JANE
BURCH and DR. CRAIG
HUTCHINSON,

        Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendants Caruso, Curtis, Yukins and Butler's Motion for Summary Judgment should be GRANTED, as Plaintiff has failed to establish any violations of her federally secured constitutional rights by any deliberate indifference to her serious medical needs.

\* \* \*

Plaintiff, formerly incarcerated at a Michigan Department of Corrections (MDOC) boot camp in Cassidy Lake, Michigan, filed a Third Amended Complaint, by and through retained counsel, pursuant to 42 U.S.C. § 1983, on July 10, 2008, against the above named defendants, alleging that they had been deliberately indifferent to her serious medical needs. Plaintiff asserts that she was denied adequate medical care for fractured knees while in MDOC custody. Claiming violations of her Eighth Amendment rights under the federal Constitution, Plaintiff sought compensatory and punitive damages.

Defendants Singhal, Burch, Hutchinson and Correctional Medical Services, Inc.,(CMS) filed a Motion for Summary Judgment on September 23, 2008, based upon a failure to state a claim of inadequate medical care (Docket #107). Defendants denied any deliberate indifference to a serious medical need. They maintained that they were not deliberately or wantonly indifferent to Plaintiff's serious medical needs, and that they did not knowingly refuse to provide urgently needed medical care so as to cause residual injuries which could have been prevented with timely attention.  In a separate Report and Recommendation of July 2, 2009, I have determined that the defense motion should be granted.

Defendants Caruso, Yukins, Curtis and Butler filed a separate Motion for Summary Judgment on October 31, 2008, based upon a failure to state a claim they directly participated in, encouraged, or implicitly authorized the allegedly unconstitutional conduct (Docket #125). Plaintiff has filed responses to Defendants' Motion, arguing to the contrary (Docket #137).

## **STATEMENT OF FACTS**

The basic facts upon which this prisoner civil rights complaint is based are stated in my 7/2/09 Report and Recommendation. Particular facts specific to Plaintiff's claims against these movants are as follows.

Defendant Sherilyn Butler, a registered nurse, was at all relevant times the health care manager at the Robert Scott Correctional Facility ("SCF").  It was a part of her job to insure that patients received adequate and timely medical care.  Butler worked at SCF with CMS employees Gopal Singhal, a physician's assistant and Co-Defendant in this action, Indira Sawhney, a medical doctor and Sati Nichols, a nurse practitioner. She also interacted

with Defendant Hutchinson. As doctors Sawhney and Hutchinson had supervisory responsibility over Defendant Singhal, Butler would occasionally take up with them patient concerns over little issues which she was unable to resolve directly with Singhal. She was unable to provide any specific detail as to such matters, but estimated that she communicated with the doctors between five and ten times in a period of a little over a year. (Butler Deposition, February 22, 2008, pages 27-30). Butler never requested that Dr. Sawhney or Hutchinson discipline Singhal in any way. Rather, it was her role to address prisoners' medical concerns with the doctors when they could not be resolved directly with a particular nurse practitioner or physician's assistant. (Id. pages 30-31).

On January 8, 2005, Plaintiff issued a health request form ("kite") regarding her need for medical treatment. Assistant Deputy Warden Gerald Brown referred the kite to Defendant Butler on January 19, 2005. (Butler Deposition, page 70; Exhibit 2). On February 1, 2005, Plaintiff sent another health request form directly to Butler, reiterating her need for treatment. (Butler Deposition, page 76; Exhibit 3). Butler responded on February 14, 2005, explaining in a written memorandum that she had reviewed Plaintiff's record with specific reference to Plaintiff's complaints that Singhal failed to arrange an examination by an orthopedic specialist on December 16, 2004. Butler explained the requirement for a Form 407 authorization. She noted that the necessary form was submitted, and that Plaintiff had since been evaluated by an orthopedic specialist and referred for physical therapy. Defendant further informed Grose that a follow-up appointment had been scheduled, although she could not reveal the date, due to security concerns. Plaintiff was also advised to kite the nurses for an appointment with a nurse practitioner to address her request for hormone replacement. (Butler Deposition, pages 77-85; 131-32; Exhibit 4).

The Third Amended Complaint also alleges that, on or about April 13, 2005, Plaintiff complained in a writing to Butler that her repeated requests for medical treatment had not been properly addressed. Butler testified that she had no recollection of the April 13th communication. Her employment at SCF ended in April 2005, and she took a significant amount of annual leave during her last several months there. During the last two weeks of her employment, "everything was being moved over to the nursing supervisor who was going to be the acting health unit manager" after Butler departed. (Butler Deposition, pages 107-08).

In an Affidavit dated March 9, 2007, Butler asserts that her primary responsibilities as health unit manager were to manage the day to day operations of the SCF ambulatory clinic. She further avers that the health unit manager is not responsible for directly treating or diagnosing medical conditions, and that she could not supersede the direction of higher level licensed professionals with respect to the course of care for the facility residents. The Affidavit further states that, during Butler's term of employment, off-site appointments were scheduled by a member of the SCF facility health care team whose primary duty was to coordinate such appointments. Responsibility for determining the timeliness and appropriateness of a specialist referral rested with the primary care provider charged with the duty to oversee the diagnosis, course of treatment and care within the SCF facility. Butler claims that she had no authority to oversee health care practices, and that she was never aware that Plaintiff's medical needs were being neglected. (Defendant's Motion, Exhibit 4).

Defendant Patricia Caruso is the Director of the Michigan Department of Corrections, and served in that capacity at all times relevant to this case. As Director, she was

responsible for the overall operations of the department. MDOC is organized into various bureaus and administrations. Those include Correctional Facilities Administration (CFA); Field Operations Administration (FOA); Operations Support Administration (OSA); and Planning and Community Development Administration (PCDA). Each subdivision is led by an administrator or deputy director who reports to Caruso. The Bureau of Health Care Services (BHCS) is a subdivision of the CFA, and is responsible for the department's health services programs. BHCS coordinates and monitors all health services, which are provided under the direction of the bureau administrator, in consultation with the chief medical officer. During the time period relevant to this case, the administrator of BHCS was Richard Russel. Dr. George Pramstaller was the Chief Medical Officer. (Docket Entry 125, Exhibit 1-Caruso Affidavit).

Caruso had no personal involvement in, or knowledge of, Plaintiff's medical treatment at SAI. She is not a medical professional. The contract between CMS and the State of Michigan was in place before Caruso became director of the Department of Corrections. Caruso asserts that health care related policies of MDOC are developed by officials with medical expertise, including the Chief Medical Officer and the BHCS personnel. She avers in her Affidavit that she has no recollection of Plaintiff, and was not aware of her medical problems until service upon her of the Complaint in this case. (Id.).

Defendant Joan Yukins was at all relevant times the Deputy Director of Field Operations Administration for the MDOC. She declares in an Affidavit that she had no personal involvement in, or knowledge of, the medical treatment of Plaintiff which gave rise to this action. Yukins avers that she became aware of Plaintiff's allegations against her only when served with a copy of the Complaint in this case. She declares that the BHCS,

in consultation with the Chief Medical Officer, administered and monitored all health related services, including, medical, nursing, dental, optometric, psychological and psychiatric treatment. (Docket Entry 125, Exhibit 3-Yukins Affidavit).

Defendant Bruce L. Curtis was at all relevant times the Warden for the Special Alternatives Incarceration (SAI) program for the MDOC. He declares in an Affidavit that, at the time of this action, MDOC Health Care Administration (HCA), under Administration and Programs, was responsible for health care at the SAI facility. Medical services were provided by CMS pursuant to a contract. Curtis declares that HCA was responsible for monitoring and oversight of the medical care provided. He did not supervise health care staff at SAI, and was not involved in any policy decisions regarding the delivery of medical care. Nor was he involved in developing, approving or renewing the contract between CMS and the State of Michigan. (Docket Entry 125, Exhibit 2-Curtis Affidavit).

Curtis avers that he has no recollection of meeting or hearing about Plaintiff while she was at SAI facility. During the month that Grose was at the boot camp, from approximately November 15 to December 15, 2004, he had no notice that she had received inadequate medical care or that she was subjected to any mistreatment by the facility staff. Curtis declares that the first time he was made aware of Plaintiff's complaints regarding her treatment at SAI was on March 17, 2005, when he received a copy of a memorandum from Nancy Zang to Plaintiff. He further states that he is aware of no reason why Plaintiff could not have made complaints while she was still at the boot camp. (Id).

Curtis' Affidavit states that he never had reason to believe that Plaintiff was at significant risk of harm while participating in SAI activities. He noted that the program is

completely voluntary, and that participants may refuse to continue exercises at any time. (Id.).

## ANALYSIS

Plaintiff concedes that none of the moving Defendants was personally involved with her actual medical care, but maintains that each of them, in his or her own way, actively participated in implementing an MDOC policy that acquiesced in or condoned the inadequate and untimely medical care provided to her by CMS and its employees pursuant to the managed care contract. (Plaintiff's Response Brief, Docket Entry 137, page 14).

For their part, the moving Defendants advance three arguments in support of their Motion for Summary Judgment. First, they maintain that Plaintiff has failed to demonstrate that she suffered an underlying constitutional violation and that, in the absence of such a showing, no supervisory liability could arise. Next, the movants maintain that Plaintiff has failed to prove that the actions of Defendants Burch and Singhal directly resulted from their failure to supervise, monitor or train. Finally, Defendants argue that they are entitled to qualified immunity because the theory of law advanced by Plaintiff was not clearly established at the time of the injury.

### Defense Argument #1

As stated in my Report and Recommendation of July 2, 2009, I conclude that neither Defendant Burch nor Defendant Singhal engaged in an act of deliberate indifference to Plaintiff's serious medical needs. Should the court adopt that view, liability on the part of any of these supervisory Defendants would be precluded. On that basis, alone, I am satisfied that the moving Defendants are entitled to Summary Judgment.

**Defense Argument #2**

Even if the court rejected my view, and determined that Plaintiff's Eighth Amendment claims against Burch and Singhal are colorable, liability on the part of the moving Defendants would not necessarily follow. To sustain an Eighth Amendment claim of deliberate indifference to medical needs, a prisoner must satisfy a two prong test. First, she must demonstrate that her medical needs were serious and required attention that adhered to "contemporary standards of decency." Hudson v. McMillan, 503 U.S. 1, 5 (1992). Second, she must establish that the Defendant was deliberately indifferent to those needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). I am satisfied that Plaintiff's bilateral tibial plateau fractures satisfy the first prong.

Deliberate indifference exists when the official knows of and disregards an excessive risk to inmate health and safety. The official must be aware of facts from which the inference could be drawn that substantial risk of harm exists, and he/she must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, the second prong is satisfied when a prison official acts with criminal recklessness, i.e. when he or she "consciously disregard(s) a substantial risk of serious harm." Brooks v. Celeste, 39 F.3d 125, 128 (6th Cir. 1994) (citing Farmer, 114 U.S. at 839-40).

Mere negligent inattention to a prisoner's request for assistance does not offend substantive due process under the Fourteenth Amendment, Davidson v. Cannon, 474 U.S. 344 (1986), and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury which could have been prevented with timely attention. The court

must consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures. Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976).

### **Plaintiff's Claims Against Defendant Butler**

As health care unit manager at SCF, Defendant Butler was responsible for day to day management of the ambulatory clinic in which Defendant Singhal treated Plaintiff. Butler was not, however, directly responsible for the diagnosis or treatment of inmates' medical conditions. She had no authority to supersede the orders of higher level medical practitioners, including physicians' assistants like Singhal. Butler had no authority to oversee the health care practices of off-site medical practitioners. Nor was she in charge of the scheduling of off-site appointments.

Butler first became aware of Plaintiff's complaints when Grose's January kite was referred to her, long after Plaintiff claims to have suffered her bilateral tibial fractures. The initial kite related to Grose's need for an orthopedic examination, and was referred to Butler on January 19, 2005. By that time, however, an appointment for Plaintiff with Dr. Mishra, an orthopedic surgeon, had been requested, approved, scheduled (by Dr. Howze) and completed (by Dr. Mishra). Upon reviewing new x-rays, Dr. Mishra diagnosed the bilateral fractures, ordered physical therapy to restore full ranges of motion and directed that Plaintiff begin walking with a cane with full weight bearing. He ordered that Grose return to the clinic in four weeks for further x-rays, and opined that no further investigations were needed at that time. When Defendant Butler received the referral of Plaintiff's kites, she investigated the complaints, assembled pertinent information and responded appropriately. On February 14, 2005, Butler advised Plaintiff that a follow-up orthopedic consult had been scheduled. Valid security concerns warranted withholding the specific date (2/24/05) from Plaintiff.

Plaintiff's follow-up orthopedic examination was performed as scheduled on February 24, 2005.  Dr. Mishra opined that there was nothing he could offer, other than to return Plaintiff to physical therapy in an effort to restore her ranges of motion.  He recommended that Plaintiff return in six weeks for another follow-up.  In accordance with that recommendation, Defendant Singhal submitted a Form 407, which was approved by CMS on March 2, 2005.  An appointment was set for Plaintiff with Dr. Mishra on April 7, 2005.  On March 10, 2005, Singhal submitted an authorization request for additional physical therapy, which was approved by CMS on March 17, 2005.

Dr. Mishra examined Plaintiff on April 6, 2005, and recommended another follow-up visit in six weeks. Due to an administrative lapse, however, an authorization form was not processed immediately. In fact, the appointment was not requested until June 3, 2005, in response to a kite filed by Plaintiff on June 1, 2005. Defendant Butler's employment at SCF, however, ended at the end of April 2005.  Prior to her departure, Plaintiff had directed a written complaint to Butler that repeated requests for medical care had not been properly addressed. Butler testified that she did not recall receiving the April 13, 2005 kite.  At that point in her career, she was sharing responsibility for the clinic with the nursing supervisor, and she was also utilizing accumulated vacation time prior to her departure.  During Butler's last two weeks at SCF, "everything was being moved over to the nursing supervisor who was going to be the acting Health Unit Manager after [Butler] left." (Butler Deposition, page 108).

Plaintiff's claims against Defendant Butler appear to be based solely upon her administrative position and what Grose believes was insufficient attention to the duties of that position.  Mere negligent inattention to a prisoner's request for assistance does not

10

offend substantive due process under the Fourteenth Amendment. Davidson v. Cannon, 474 U.S. 344 (1986), and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 106. There must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury which could have been prevented with timely attention. The Doctrine of Respondeat Superior does not apply in Section 1983 lawsuits to impute liability to supervisory personnel. Monell v. Dept. of Social Services of New York City, 436 U.S. 658, 691-95 (1978), unless it is shown that "the supervisor encouraged [the] specific incident of misconduct or in some other way directly participated in it." Bellame v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). No such showing has been made as to Defendant Butler, and I am persuaded that she is entitled to summary judgment.

## Plaintiff's Claims Against Caruso, Yukins and Curtis

Plaintiff's claims of liability against Defendants Caruso (Director of MDOC), Yukins (Deputy Director) and Curtis (Warden of Boot Camp) are also based upon their supervisory authority. Plaintiff does not allege any specific involvement of these state prison officials in her medical treatment. Plaintiff maintains, however, that these Defendants knew, or should have known, of CMS's inadequate provision of medical care based on the large number of past lawsuits that have been filed by Michigan inmates against CMS. She alleges that these Defendant prison officers awarded a contract to CMS but then failed to train medical staff or enact policies to ensure against Eighth Amendment violations of the prison's duty to provide medical care. Plaintiff further contends that the failure to train implicitly authorized the conduct of the offending medical providers.

Plaintiff has failed to demonstrate any specific conduct by these Defendants that would support a finding that they directly participated in, encouraged, or implicitly authorized or approved the allegedly unconstitutional conduct of Burch and/or Singhal. She does not allege any specific involvement of these Defendants in her medical treatment. Nor is there any evidence that any of these officials negotiated, entered into, or renewed the medical services contract between MDOC and CMS. Although Yukins and Caruso held positions of administrative authority, there is no evidence that either of them played a direct role in the selection, training or supervision of the department's various medical providers. Although Defendant Curtis had administrative authority over the SAI facility, he did not supervise the health care staff, or play a role in the policy decisions governing the delivery of medical services. The doctrine of respondeat superior does not apply in Section 1983 lawsuits to impute liability to supervisory personnel. Monell, 436 U.S. at 691-95, unless it is shown that "the supervisor encouraged that specific incident of misconduct or in some other way directly participated in it. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). No such showing has been made as to these movants.

**Defense Argument #3**

The third argument of the moving Defendants is based upon the doctrine of qualified immunity. In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court declared that "government officials performing discretionary function[s] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Assuming, for purposes of argument, that Plaintiff here has adequately stated a claim against the movants for violation of her Eighth Amendment rights, it is necessary to determine whether the "contours" of that right were sufficiently clear that a reasonable official would understand that his/her conduct violated the right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

To determine whether a right is clearly established, a court may rely on decisions of the United States Supreme Court and other federal courts of record. Siggers-El v. Barlow, 412 F.3d 693, 703 (6th cir. 2005). An official will be immune "if officials of reasonable competence could disagree" on whether the challenged conduct violated the plaintiff's rights. Malley v. Briggs, 475 U.S. 335, 341 (1986). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley, 475 U.S. at 341).

Based upon the facts established in this record, and the legal doctrines enunciated in the cases cited in this report, I conclude that Defendants Caruso, Yukins, Curtis and Butler would not have reasonably understood that their conduct, as alleged in the Complaint and reflected in the evidence, constituted a violation of Plaintiff's Eighth Amendment right to adequate medical care. In my view, the theory of liability advanced by Plaintiff against these supervisory officials represents a major extension of Eight Amendment law. The movants could not reasonably have been expected to predict such an extension of liability. Accordingly, I conclude that all of the moving Defendants are protected by the doctrine of qualified immunity.

For all of the above reasons, I recommend that Defendants' Motion be granted.

**NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                          s/Donald A. Scheer
                                                                          DONALD A. SCHEER
                                                                          UNITED STATES MAGISTRATE JUDGE

DATED: August 10, 2009

---

**CERTIFICATE OF SERVICE**

    I hereby certify on August 10, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 10, 2009: **None.**

                                                         s/Michael E. Lang
                                                         Deputy Clerk to
                                                         Magistrate Judge Donald A. Scheer
                                                         (313) 234-5217